IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JULIE BUCKLEY,

      Plaintiff,

v.

CIVIL ACTION NO.: 5:24CV96
(BAILEY)

ACTING COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

FILED

NOV 2 0 2024

U.S. DISTRICT COURT- WVND
WHEELING, WV 26003

# REPORT AND RECOMMENDATION

## I.  Introduction

This action arises out of Plaintiff's application for Title II Disability Insurance Benefits and Plaintiff's application for Title XVI Supplemental Security Income. After considering the parties' briefs, the administrative record, the applicable law, and the Court file, the undersigned is satisfied that oral argument would not substantially aid this report and recommendation. Accordingly, the undersigned would conclude that this matter should be remanded, in part, as set forth more fully below.

## II.  Factual/Procedural History

On June 2, 2020, Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income. R. 166, 380-381, 382-388. Plaintiff's claims were denied initially and upon reconsideration. R. 258, 259, 260, 261. An administrative hearing was held on June 8, 2023. R. 186-225. On July 7, 2023, the ALJ (Administrative Law Judge, Regina Carpenter) issued an unfavorable decision. R. 166-179. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-3. Plaintiff then filed the instant action. ECF No. 1. The Commissioner has filed an Answer along

with the Administrative Record. ECF No. 4. The issues are fully briefed. *See* ECF Nos. 6, 8, and 10.

## III. ALJ Decision

### A. The Five-Step Evaluation Process

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.
>
> [Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920.]
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. *Richardson v. Califano*, 574 F.2d 802, 804 (4th Cir. 1978). The burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. *Hicks v. Gardner*, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be "disabled" or "not disabled" at one of the five steps, the process does not proceed to the next step. *Id.*

**B. ALJ Findings**

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2014. R. 168. The ALJ further found that Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of December 1, 2012. *Id.*

Prior to the date last insured (December 31, 2014), the ALJ found that Plaintiff had no severe impairments. Plaintiff's application for Title II DIB benefits was denied at step 2. Since the date of Plaintiff's application for Supplemental Security Income (6/2/2020), Plaintiff was found to have the following severe impairments: degenerative disc disease and degenerative joint disease of the cervical and lumbar spine; residuals of a left hip replacement; degenerative joint disease of the sacroiliac joints; and mild restrictive lung disease. R. 169. These medically determinable impairments were found to significantly limit Plaintiff's ability to perform basic work activities as required by SSR 85-28. The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). R. 172.

The ALJ determined that Plaintiff has the following residual functional capacity:

> [t]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations: no crawling or climbing ladders, ropes or scaffolds, and no more than occasional balancing, crouching, kneeling, stooping or climbing ramps and stairs, as those terms are defined in the DOT/SCO; and no more than occasional exposure to extremes of heat or cold, vibration, or atmospheric conditions, as those terms are defined in the DOT/SCO.

The ALJ determined that Plaintiff can perform her past relevant work as a real estate agent (DOT# 250.357-018) (light/skilled/SVP 5); a real estate clerk (DOT# 219.362-046) (sedentary/skilled/SVP 5); and receptionist (DOT# 237.367-038) (sedentary/semi-skilled/SVP 4), as generally performed in the national economy. R. 178. Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2012, through the date of the decision, i.e., July 7, 2023. R. 179.

## IV. Motion for Summary Judgment

On August 16, 2024, Plaintiff filed a Motion for Summary Judgment and a brief in support thereof. ECF Nos. 6 and 7. Defendant filed a Motion for Summary Judgment and Memorandum in Support on September 16, 2024. ECF Nos 8 and 9. Plaintiff filed a Reply brief on September 27, 2024. ECF No. 10.

### A. Arguments of the Parties

#### 1. Plaintiff's Arguments

Plaintiff asserts two assignments of error: (1) the ALJ's RFC finding erroneously omitted proven mental functional limitations without explanation; and (2) the ALJ failed to appropriately consider Plaintiff's chronic fatigue syndrome. ECF No. 7.

### 2. Defendant's Arguments

Defendant first argues that the only application relevant to Plaintiff's appeal is for supplemental security income because Plaintiff did not demonstrate a medically determinable severe impairment prior to the date of last insured, and Plaintiff does not contest this finding on appeal. Defendant next argues that the ALJ's reasoning for omitting mental functional limitations within the RFC is adequately explained, and ALJ's RFC assessment is supported by substantial evidence. Finally, Defendant argues that Plaintiff's chronic fatigue syndrome was not a medically determinable impairment, and therefore the ALJ was not required to address the same. ECF No. 9.

### C. The Standards

#### 1. Summary Judgment

"Summary Judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lawson v. Union County Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

#### 2. Judicial Review

The Court's review of an ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether the ALJ's factual findings are supported by substantial evidence. *Rogers v. Kijakazi*, 62 F.4th 872, 875 (4th Cir. 2023).

"Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (internal citations and quotations omitted). "If there is evidence to

justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966), overruled by implication on other grounds by *The Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

### D. Discussion

#### 1. Disability Insurance Benefits

Defendant's argument vis-à-vis Plaintiff's claim for disability insurance benefits is well-taken. "The five-step process for assessing a claim for disability insurance benefits is spelled out in 20 C.F.R. § 404.1520(a)(4)(i)-(v)." *Brown v. Commissioner Social Security Administration*, 873 F.3d 251, 254 (4th Cir. 2017). At step two, "[i]f the claimant is employed or does not have a severe impairment, he [or she] is not disabled and the analysis ends." *Id.* (citing *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016)).

Here, the ALJ determined at step two of the evaluation process that Plaintiff "did not have a medically determinable severe impairment prior to the December 31, 2014, date last insured[.]" R. 169. Thus, the ALJ denied Plaintiff's application for disability insurance benefits. *Id.* In her Motion for Summary Judgment and Memorandum in Support, Plaintiff does not challenge the ALJ's finding at step two that Plaintiff did not have a severe impairment prior to the date of last insured. ECF Nos. 6 and 7. Plaintiff addresses this argument in Plaintiff's reply brief, filed at ECF No. 10, by arguing that Plaintiff had a mild mental limitation prior to her date of last insured. This does not save Plaintiff's claim for disability insurance benefits, however, because this impairment was not found to be a severe impairment, and Plaintiff does not challenge the ALJ's finding that Plaintiff's mild mental limitations were non-severe. Thus, the undersigned would agree with Defendant that the only claim relevant to Plaintiff's appeal is for supplemental security

income. Plaintiff's Motion as it relates to her claim for social security disability insurance benefits should therefore be denied.

### 2. RFC Limitations

Plaintiff argues that the ALJ's RFC improperly omitted proven mental functional limitations without explanation. Plaintiff contends that this case must therefore be remanded. Defendant disagrees and contends that limitations such as Plaintiff's non-severe, mild mental functional limitations "do not usually limit a claimant's ability to work," so omission of them from the RFC is not reversible error. ECF No. 9 at p. 5. Defendant argues that an ALJ is not required to address mild limitations in either the RFC or the explanation that follows. Defendant further argues that substantial evidence supports the ALJ's decision not to account for Plaintiff's mild mental functional limitations within the RFC, and that the ALJ's decision does not prejudice Plaintiff because Plaintiff has failed to demonstrate the additional RFC limitations Plaintiff believes are required as a result of her mild mental functional limitations. For the reasons that follow, the undersigned would agree with Plaintiff.

"It 'is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity[.]" *Mazyck v. Astrue*, 2012 WL 315648, at * 2 (D.S.C. Feb. 1, 2012). "[T]he ALJ must consider the severe and nonsevere complaints and impairments in combination in determining the Plaintiff's disability." *Id.* "Furthermore…the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). Here, the ALJ did not adequately explain her evaluation of the combined effects of the impairments because the ALJ failed to address, either

in the RFC or in the narrative discussion that followed, Plaintiff's mild mental functional limitations.

At R. 170-171, the ALJ considered Plaintiff's mental impairments at step two of her analysis, i.e., her medically determinable mental impairments of mixed depression and anxiety disorder, and adjustment disorder, and found that they constituted non-severe impairments. R. 170. The ALJ explained that these impairments were non-severe and caused no more than a mild limitation in any of the functional areas, and no more than a minimal limitation in Plaintiff's ability to do basic work activities. R. 171. At the end of this step, the ALJ acknowledged that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." R. 172. However, the ALJ did not provide a more detailed mental residual functional capacity assessment at steps 4 and 5 of the opinion. R. 172-178. That is, the ALJ did not provide for any mental functional limitations within the RFC and did not explain why mental functional limitations may have been omitted. Without such an explanation, the undersigned is unable to meaningfully evaluate whether the ALJ's RFC is supported by substantial evidence. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) ("remand may be appropriate…where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review") (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

Defendant notes that Plaintiff's mental functional limitations are mild, and thus non-severe, and argues that "courts generally find that non-severe impairments often translate to no work limitations in the RFC." ECF No. 9 at p. 6. Defendant asks the Court to assume from the ALJ's failure to mention any mental limitations within the RFC that the ALJ believed none were needed.

The Court cannot make such a leap. *See Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83, 108 (4th Cir. 2020) (rejecting Commissioner's attempt to explain the ALJ's statement as an impermissible post-hoc rationalization).

Defendant further contends that the ALJ addressed Plaintiff's mental work limitations at step two, and thus, it was not necessary for the ALJ to address the same again in the RFC findings. Defendant cites *Houston v. Berryhill*, 2019 WL 2178327 (D.S.C. Apr. 15, 2019) and *Perry v. Colvin*, 2016 WL 1183155 (S.D.W. Va. Mar. 28, 2016), as well as *Sprague v. Colvin*, 2014 WL 2579629 (M.D. Fla. June 9, 2014) to support this argument. The Court is not persuaded. First, the undersigned would note that *Sprague* is a case from the Middle District of Florida, and thus, not an opinion from the Fourth Circuit. Moreover, in *Sprague*, the Court considered whether mild mental limitations should have been included within an RFC, which is a different issue than the one ultimately under consideration here – i.e., that the ALJ erred when she failed to explain her reasons for not including mild mental limitations within Plaintiff's RFC. This is a distinction with a difference. One issue addresses the substance of an ALJ's opinion, while the other questions the sufficiency of an ALJ's reasoning for an opinion. Again, "remand may be appropriate…where…inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). To the extent the ALJ's reasoning is called into question in *Sprague*, the Court found that the "law judge…expressly articulated in her decision the governing principles and…concluded that the plaintiff did not have any functional limitations from his mental impairments." *Sprague,* 2014 WL 2579629, at * 6. This is not what occurred in the instant case.

In *Houston* and *Perry*, the ALJs discussed the impact of the claimant's non-severe impairments upon the claimant's ability to work both at step two and at step four of the analysis.

9

*See Houston*, 2019 WL 2178327, at * 9 ("[l]ater in the ALJ's decision, in explaining how he determined Plaintiff's RFC…the ALJ noted" that the evidence did not show that the limitations caused by the non-severe impairment of anxiety warranted greater restrictions than those found in the RFC). *See also Perry*, 2016 WL 1183155, at * 7 ("the ALJ's extensive discussion of [the] record evidence at step two, combined with her further conclusion at the RFC stage…is more than sufficient to demonstrate that the ALJ considered Plaintiffs non-severe impairments when assessing RFC"). Here, the ALJ only discussed Plaintiff's non-severe impairments at step two of the analysis. This case should therefore be remanded as to this issue.

### 3. Chronic Fatigue Syndrome

Plaintiff next argues that the ALJ failed to consider her chronic fatigue syndrome at any step of the five-step evaluation process, and that this matter should be remanded as to this issue. This argument is not persuasive. "[A] medical determination is a necessary, but not sufficient, requirement for a finding of disability based upon [chronic fatigue syndrome]." *Bowers v. Colvin*, 628 Fed.Appx. 169, 173 (4th Cir. 2015) (citing *Mastro v. Apfel*, 270 F.3d 171, 173 (4th Cir. 2001). Here, there is no evidence that a medical determination has been made that Plaintiff suffers from chronic fatigue syndrome. Indeed, the documents to which Plaintiff refers in support of this contention are medical records which note Plaintiff's generalized complaints of fatigue but say nothing about chronic fatigue syndrome. In many of the records, the complaint of "fatigue" appears to be a recycled note, appearing alongside such items as "tick bite." *See e.g.*, R. 1153 (in a record from May 18, 2022, the onset of the "tick bite" is noted to be April 20, 2018). Further, these generalized complaints often arise in contexts not related to chronic fatigue syndrome, i.e., respiratory illnesses, COVID, and orthopedic visits. *See e.g.*, 590, 1123, 1133, and 1500. Chronic fatigue syndrome is thus not a "medically determinable impairment" for Plaintiff, and it was

therefore not an error for the ALJ to not consider the same. *See* 20 C.F.R. § 416.920(a)(4). *See also Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) ("[t]o make [an RFC] assessment, the ALJ must 'consider all of [the claimant's] medically determinable impairments of which [the ALJ] is aware,' including those not labeled severe at step two").

To the extent Plaintiff argues that the ALJ's determination is not supported by substantial evidence because the ALJ failed to consider Plaintiff's claims of fatigue, the undersigned is not persuaded. The ALJ acknowledged Plaintiff's complaints related to fatigue (R. 173, 174, 175, 176, and 177), but nevertheless found that Plaintiff "babysits her three grandchildren daily, ages 2, 2 1/2, and 10. She picks up after the children and does laundry....[s]he can drive, shop, and do some light cooking." R. 179. The ALJ further found that the medical evidence and the claimant's activities support the RFC finding. The undersigned sees no reason to disturb the ALJ's findings vis-à-vis Plaintiff's claimed symptoms of fatigue. Substantial evidence supports the RFC as to this issue.

Finally, Plaintiff's argument that contradictory evidence exists in the record with respect to her claims of fatigue is not persuasive. Plaintiff cites to the consultive examiner's (Jimmy Adkins, II, P.A.,) report which contained the "Impression" that Plaintiff had "chronic fatigue." However, this Impression does not contradict the fact that Plaintiff was never diagnosed with chronic fatigue syndrome. The medical evidence of record shows that she was not.

Plaintiff argues that the ALJ should have further developed the record to reconcile Mr. Adkins' diagnosis of chronic fatigue with Plaintiff's allegations of chronic fatigue syndrome. The undersigned is not persuaded. Again, there is no evidence in the administrative record that Plaintiff was ever diagnosed with chronic fatigue syndrome. Plaintiff acknowledges that "chronic fatigue" is "a condition distinct and not to be confused with chronic fatigue syndrome." ECF No.

11

10 at p. 6. It is for this reason that Mr. Adkins' consultive opinion of "chronic fatigue" does not create an inconsistency with Plaintiff's allegation of "chronic fatigue syndrome." Additionally, the undersigned would note that Mr. Adkins' opinion does not contain any discussion related to Plaintiff's claims of fatigue or chronic fatigue. As a result, the "Impression" appears to be much like the notes of "fatigue" in Plaintiff's medical records – a claim made by Plaintiff that is repeated at the end of a medical note. *See* R. 1056-1060 (the only two places where "chronic fatigue" appears is in the "Chief Complaint" section and in the "Impression" section, lending credence to the conclusion that "chronic fatigue" was a repeat of Plaintiff's own complaints rather than a diagnosis based upon clinical findings).

## V. Recommendation

Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion [6] for Summary Judgment be **GRANTED IN PART AND DENIED IN PART as set forth more fully above**. The undersigned further **RECOMMENDS** that Defendant's Motion [8] for Summary Judgment be **GRANTED IN PART AND DENIED IN PART as set forth more fully above**. Finally, the undersigned **RECOMMENDS** that this matter be **REMANDED** as set forth more fully above.

**Any party who appears *pro* se and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.**

A copy of such objections should be submitted to the District Judge of Record. **<u>Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.</u>** *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further **DIRECTS** the Clerk to mail a copy of this Report and Recommendation to any pro se party by certified mail, return receipt requested, to their last known address as reflected on the docket sheet.

Respectfully submitted this 20th day of November 2024.

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE